IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEKSANDR SELYUTIN, | |
| Plaintiff, | Case No. 18 cv 3951 |
| v. | Judge Mary M. Rowland |
| AON PLC., AON SERVICE CORPORATION, UNKNOWN PEACE OFFICERS OF STATE OF Illinois, UNKOWN DEFENDANTS, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Aleksandr Selyutin ("Selyutin"), brought this lawsuit against Aon PLC and Aon Service Corporation (collectively, "Aon") and several unknown defendants. Selyutin alleges that his former employer, Aon, discriminated against him based on his disability and violated the Illinois Whistleblower Act. Aon moves to dismiss Counts IV and V in the Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For reasons stated herein, Aon's partial Motion to Dismiss [73] is granted in part and denied in part.

### I. Background

Selyutin's complaint brings claims against Aon for discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (Count I), discriminatory discharge under the ADA (Count II), retaliatory discharge under

1

Illinois law (Count III),[1] violation of the Illinois Whistleblower Act (Count IV), violation of § 12112(d)(4)(A) of the ADA (Count V) and several other state law claims.[2]

The following factual allegations are taken from the Third Amended Complaint (Dkt. 72) ("TAC" or "complaint") and are accepted as true for the purposes of the motion to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Plaintiff Selyutin began working for Aon in March 2001 as a staff accountant, and he was eventually promoted to Senior Finance Manager. TAC ¶3. His work at Aon involved compliance with the Sarbanes Oxley Act, Foreign Corrupt Practices Act and the Office of Foreign Assets Control. *Id*. Selyutin alleges that he suffers from depression and paranoia, and that Aon accommodated his disabilities by allowing him to work remotely from 2012 to 2017. *Id*. ¶ 22.

On February 23, 2016, Selyutin met with a Federal Bureau of Investigations (FBI) Special Agent and reported that he believed Aon and some Senior Corporate Officer(s) violated state and federal laws, rules, or regulations and that he was subjected to retaliatory harassment by Aon. *Id*. ¶ 20. According to Selyutin, in the third quarter of 2016, Aon auditors identified the multi-element revenue recognition issue as a

---

[1] Aon does not move to dismiss Counts I through III.

[2] Selyutin brings the following claims against "Unknown Peace Officers of State of Illinois, Unknown Defendants": Count VI for violation of the right to privacy under the Illinois Constitution; Count VII is an Illinois tort claim for violation of Selyutin's right to privacy; Count VIII is a claim for Illinois private nuisance tort, and Count IX, intentional infliction of emotional distress. Finally, Selyutin brings Count X for defamation/slander against "John Doe, Unknown Peace Officers of State of Illinois, Unknown Defendants". These claims are not addressed in this order.

significant deficiency. *Id.* ¶ 54. The result was a significant financial misstatement of $160 million and a restatement of financial statements for Aon Risk Services' U.S. Retail division for three years and a charge or reduction in equity of $160 million. *Id.*

Selyutin believes that Aon learned about his February 23, 2016 meeting with the FBI Special Agent around the end of August 2016 from Selyutin's former criminal attorney. *Id.* ¶ 25. On or around November 18, 2016, Selyutin was told by Aon that his position as Senior Finance Manager would be transformed: that he would transition some of his responsibilities to another area and some of his responsibilities would be transformed to an automated process. *Id.* ¶ 26. On April 26, 2017, Selyutin was informed by Aon that his position was eliminated and that his last day would be May 10, 2017. *Id.* ¶ 31. Selyutin was given two weeks to find another position at Aon, but was not offered another position there. *Id.* ¶¶ 32-33. Selyutin also alleges that on April 24, 2017, Aon inquired with his former criminal defense attorney about a psychological examination Selyutin had in his criminal case. *Id.* ¶¶ 28-29.

On or around August 8, 2017, Aon posted Selyutin's prior position with the same responsibilities Selyutin had before November 2016. *Id.* ¶ 38. Selyutin believes he was terminated by Aon because he reported what he believed to be criminal conduct – Aon's intentional misstatement of financial results—to the FBI and to his supervisor at Aon. *Id.* ¶ 51.

**II. Standard**

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to

3

dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)). In addition, the Court construes the *pro se* complaint liberally, holding it to a less stringent standard than lawyer-drafted pleadings. *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

### III. Analysis

#### A. Prohibited Inquiry under the ADA (Count V)

The ADA prohibits discrimination against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under 42 U.S.C. § 12112(d)(4)(A), a covered entity "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." Thus the ADA "permits an employer to inquire into the nature or severity of an employee's disability if 'such examination or inquiry is shown to be job-related and consistent with business necessity.'" *Pamon v. Bd. of Trs. of the Univ. of Ill.*, 483 F. App'x 296, 298 (7th Cir. 2012) (citations omitted).

Aon acknowledges that a prohibited inquiry could come in the form of the employer "asking another person about the employee's disability." (Dkt. 74 at 10, citing U.S. Equal Employment Opportunity Commission (EEOC) Enforcement Guidance[3]). But Aon argues that Selyutin's claim is not sufficiently pled because Selyutin makes only a "conclusory allegation that 'Aon and Unknown Defendants' inquired about" his psychological evaluation. (Dkt. 74 at 10). However, Aon does not cite any case law requiring a plaintiff to specifically identify the individual at the

---

[3] Available at https://www.eeoc.gov/laws/guidance/enforcement-guidance-disability-related-inquiries-and-medical-examinations-employees.

employer who made the inquiry in order to state a claim under 42 U.S.C. § 12112(d)(4)(A).

Selyutin alleges that "[o]n or around April 24, 2017 the Defendants Aon and Unknown Defendants inquired about this [psychological] evaluation and to the nature and severity of the disability, and medications, in violation[] of [the ADA]." TAC ¶¶29, 51. He alleges that this happened while he was at state court with his criminal defense attorney. *Id*. ¶29. He alleges that he witnessed his attorney "discuss[] on the phone Plaintiff's evaluation with not yet identified person [and Plaintiff] believes that this not yet identified person was Unknown Defendants and / or Defendants Aon." *Id*. The Court agrees with Aon that this latter allegation leaves room for the possibility that the person on the other end of the phone call was not an Aon employee. Still, he alleges that Aon inquired about his April 10, 2017 psychological evaluation. TAC ¶29.

Selyutin's allegations are scant but not pure speculation. He alleges that Aon made an inquiry about his psychological evaluation, the specific date and location of the conversation, that he witnessed the conversation, that his attorney asked him questions about his psychological evaluation at that time, and that he believed that his attorney was talking to someone from Aon. Selyutin will *need to prove that Aon* made the prohibited inquiry, but for now the Court's "task is not to determine what allegations are supported by the evidence but to determine whether [plaintiff] is entitled to relief if everything that he says is true." *Doe v. Purdue Univ.*, 928 F.3d 652, 656 (7th Cir. 2019). Drawing permissible inferences in Selyutin's favor and

6

liberally construing his *pro se* complaint (*Fortres Grand Corp.*, 763 F.3d at 700; *Cesal*, 851 F.3d at 720), the Court finds that Selyutin has stated a claim that Aon made a prohibited inquiry under 42 U.S.C. § 12112(d)(4)(A).

Aon's motion to dismiss Count V is denied.

### B. Illinois Whistleblower Act (Count IV)

The Illinois Whistleblower Act (IWA) 740 ILCS 174/1 *et seq.* was created "to protect employees from adverse employment actions in retaliation for reporting or refusing to engage in unlawful conduct by their employers." *Huang v. Fluidmesh Networks, LLC*, 2017 U.S. Dist. LEXIS 111608, at *6 (N.D. Ill. July 18, 2017) (internal quotations and citation omitted). Aon argues that Selyutin's IWA claim must be dismissed because Selyutin cannot show that he suffered an adverse action because of his alleged interactions with the FBI, and his claim also fails because he made internal complaints and did not refuse to participate in any alleged unlawful activity and did not disclose public corruption.

*1. Statute of Limitations*

First, the Court agrees with Aon that the statute of limitations bars any IWA claim based on allegations involving events before June 2013, since Selyutin filed his complaint in this case in June 2018. (Dkt. 74 at 9). 735 ILCS 5/13-205 (five year limitation for "all civil actions not otherwise provided for."); *see Coffey v. DSW Shoe Warehouse, Inc.*, 145 F. Supp. 3d 771, 775 (N.D. Ill. 2015) (applying five-year statute of limitations to IWA case). For example Selyutin alleges that in August 2012, he was keeping documentation in a folder, "Report to SEC" and experienced retaliation as a

7

result of documenting that issue. TAC ¶8. That allegation, to the extent it is a basis for his IWA claim, is time-barred.

*2. IWA Section 15*

Under Section 15(b) of the IWA, "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b).[4] "To bring an IWA retaliation claim, [plaintiff] must allege that (1) he reported information to a government agency (2) about activity he reasonably believed to be unlawful and (3) suffered an adverse action by his employer because of that disclosure." *Blazek v. ADT Sec. LLC*, 2019 U.S. Dist. LEXIS 90158, *8 (N.D. Ill. May 30, 2019) (citation omitted). Aon does not dispute that Selyutin sufficiently alleges the first and second elements. However Aon contends Selyutin has not sufficiently pled the third element because the time between when Aon allegedly learned of his FBI meeting and his termination was too remote, and if he relies on the date that his position was transformed, that is not an adverse employment action. Aon argues that Selyutin "learned his job was eliminated on April 26, 2017, more than fourteen months after Plaintiff's last contact with the FBI and more than seven months after Aon allegedly learned of this meeting." (Dkt. 74 at 7). Aon also acknowledges that Selyutin claims that Aon learned

---

[4] The Court notes that Selyutin also cited 740 ILCS 174/15(a) in his Third Amended Complaint (TAC p. 31), but he did not make any allegation that Aon retaliated against him for "disclos[ing] information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding."

8

of his February 2016 FBI meeting in August 2016, and that he was informed by Aon his position would be transformed in November 2016. (*Id*. at 8).

First, the Court finds that, at this pleading stage, the transformation of Selyutin's job in November 2016 can constitute an adverse action. Selyutin alleges that Aon informed him that his position would be "transformed", and some of his responsibilities were reassigned elsewhere and some were automated. TAC ¶52. Although it is not clear from the complaint what responsibilities were left to him during the approximately five months before he was informed his position was eliminated, the Court can reasonably infer that the November 2016 change was an "effective demotion" or "substantial change in employment responsibilities" both of which "can be a materially adverse employment action." *Elue v. City of Chi.*, 2017 U.S. Dist. LEXIS 94519, at *15-16 (N.D. Ill. June 20, 2017) (allegation that plaintiff's job responsibilities were dramatically altered sufficient to state a materially adverse employment action); *see also Spalding v. City of Chicago*, 186 F. Supp. 3d 884, 918 (N.D. Ill. 2016) (finding that acts such as transfer to a less desirable shift and assignment to "dead end" cases while not affecting plaintiff's salary, could still be "materially adverse" for purposes of IWA claim).

Next is the issue of whether Selyutin suffered the adverse action because of his disclosure. Depending on the timeframe, suspicious timing, particularly when combined with other evidence, can show a causal link between a plaintiff's disclosure and the adverse action. *See Naficy v. Ill. Dep't of Human Servs.*, 697 F.3d 504, 513 (7th Cir. 2012) (noting five and six-month gaps between a plaintiff's complaint and

9

adverse employment action did not amount to suspicious timing); *Lerman v. Turner*, 2013 U.S. Dist. LEXIS 118479, at *53 (N.D. Ill. Aug. 21, 2013) (one month between plaintiff's complaints about misuse of grant funds and plaintiff's termination, in addition to other evidence, sufficient to avoid summary judgment on retaliatory discharge claim).

The bar at this stage is not high. *Logan v. City of Chi.*, 2018 U.S. Dist. LEXIS 182287, at *18 (N.D. Ill. Oct. 24, 2018) (declining to dismiss IWA claim and explaining that plaintiff "is not required to prove causation at this point, but to allege it plausibly."). The two and a half month period between when Aon allegedly learned of Selyutin's FBI meeting and his job being transformed is enough for Selyutin to survive the motion to dismiss on the issue of causation. In addition, Selyutin specifically alleges that his position, which he was told was being eliminated, was re-posted by Aon three months after he was terminated. TAC ¶ 38. This, combined with the timing of the adverse action, help support Selyutin's theory of retaliation.

Aon cites a number of cases decided on summary judgment and/or that involved longer time periods. *Lalvani v. Cook Cty.*, 269 F.3d 785 (7th Cir. 2001) (seven year or year and a half periods between protected conduct and termination did not show causal connection); *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390 (7th Cir. 1999) (four month time lapse plus other evidence favoring defendant meant that plaintiff could not show retaliation); *Ghiles v. City of Chi. Heights*, 2016 U.S. Dist. LEXIS 17685, at *4 (N.D. Ill. Feb. 12, 2016) (six-month delay too remote); *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 564 (7th Cir. 2016) (summary judgment). In

*Jones v. A.W. Holdings LLC*, 484 F. App'x 44, 49 (7th Cir. 2012), a case also relied on by Aon, and decided on summary judgment, "the termination came two months after her complaint, and we have repeatedly stated that a two-month gap between protected activity and an adverse job action is too long to support a claim of retaliation absent other evidence… [plaintiff] has no other evidence suggesting that she was terminated in retaliation for complaining about Dr. Salon." Here, at the pleading stage, Selyutin has not had the opportunity to develop evidence suggesting he was terminated in retaliation for his disclosure to the FBI.

Accordingly Selyutin's IWA claim based on his alleged February 2016 FBI meeting survives. The Court agrees, however, with Aon that Selyutin's alleged June 2017 meeting with the FBI is not actionable because it occurred after his termination. (Dkt. 74 at 7).

*3. IWA Section 20*

Although the complaint does not cite either section, Aon interprets the other part of Selyutin's IWA claim to be brought under Section 20 or 20.1 of the IWA. Under Section 20 "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation." 740 ILCS 174/20. To state a claim under this section, Selyutin must allege that "(1) he refused to participate in an activity that would result in a violation of a state or federal law, rule, or regulation, and (2) his employer retaliated against him because of that refusal." *Huang*, 2017 U.S. Dist. LEXIS 111608, at *10 (internal citations and quotations omitted). Section 20.1 prohibits retaliation "if the

11

act or omission would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing." 740 ILCS 174/20.1.

Selyutin does not allege that he disclosed public corruption or wrongdoing or that he refused to participate in an activity that would result in a violation of a state or federal law, rule, or regulation. *See Huang*, 2017 U.S. Dist. LEXIS 111608, at *11 (dismissing claim under 740 ILCS 174/20 because plaintiff did not allege that he "refused" to engage in any such activity). In addition, "[u]nder the IWA, there is no cause of action where an employee reveals information only to his or her employer." *Zelman v. Hinsdale Twp. High Sch. Dist. 86*, 2010 U.S. Dist. LEXIS 120147, at *4 (N.D. Ill. Nov. 12, 2010) (collecting cases); *Rufus v. City of Chi.*, 2018 U.S. Dist. LEXIS 67440, at *11 (N.D. Ill. Apr. 23, 2018) ("The IWA normally does not protect employees who merely make internal disclosures to their own employers.").

Moreover, Selyutin did not address Aon's arguments that his internal complaints or reports within Aon are not actionable. Therefore he has waived any argument on that issue or in support of any claim under either Section 20 or 20.1 of the IWA. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("We apply that rule where a party fails to develop arguments related to a discrete issue, and we also apply that rule where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss."). *See also Mathis v. N.Y. Life Ins. Co.*, 133 F.3d 546, 548 (7th Cir. 1998) ("even pro se litigants . . . must expect to file a legal argument and some supporting authority.") (internal citations and quotations omitted); *Sabbia*

12

*v. Comm'r of the SSA*, 669 F. Supp. 2d 914, 920 (N.D. Ill. 2009) ("It is well-settled that insufficiently-developed arguments are forfeited [and] that this rule applies to pro se litigants as well.").

Finally, Selyutin requests another opportunity to amend his complaint if the motion to dismiss is not denied in full. (Dkt. 77 at 16-17). That request is denied. Selyutin has now had three opportunities to amend his complaint. *See Haywood*, 887 F.3d at 335 ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects.").[5]

## IV. Conclusion

For the stated reasons, Aon's Motion to Dismiss [73] is granted in part and denied in part. The motion to dismiss Count V (ADA, prohibited inquiry) is denied. The motion to dismiss Count IV (Illinois Whistleblower Act) is granted in part as follows: Selyutin cannot proceed on an IWA claim based on allegations pre-dating June 2013; he cannot proceed on an IWA claim based his internal complaints made within Aon; and he cannot proceed on an IWA claim based on Section 20 or 20.1 of the IWA. However Count IV, based on 740 ILCS 174/15(b) of the IWA, survives.

---

[5] The Court previously denied Selyutin's request for a criminal referral to the United States Attorney of Northern District of Illinois. (TAC, pp. 32, 44). (Dkt. 71).

E N T E R:

Dated: September 3, 2020

MARY M. ROWLAND
United States District Judge